## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| INDONESIAN FISHERY PRODUCERS PROCESSING AND MARKETING ASSOCIATION<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Court No. 25-00035 |

## **COMPLAINT**

Plaintiff Indonesian Fishery Producers Processing and Marketing Association ("AP5I"), by and through its attorneys, Fox Rothschild LLP, alleges and states as follows:

### **THE ADMINISTRATIVE DECISION TO BE REVIEWED**

1.  Plaintiff seeks judicial review of the final affirmative injury determinations of the U.S. International Trade Commission ("Commission") in the investigations of Frozen Warmwater Shrimp from Ecuador, India, Indonesia, and Vietnam. *Frozen Warmwater Shrimp From Ecuador, India, Indonesia, and Vietnam*, 89 Fed. Reg. 102,163 (Dec. 17, 2024); *see also Frozen Warmwater Shrimp from Ecuador, India, Indonesia, and Vietnam*, Inv. Nos. 701-TA-699-700 and 702 and 731-TA-1660 (Final), USITC Pub. 5566 (Dec. 2024) ("*Frozen Warmwater Shrimp*, USITC Pub. 5566").

### **JURISDICTION**

2.  Plaintiff brings this action pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and 19 U.S.C. § 1516a(a)(2)(B)(iii) to contest the aforesaid final determination. This Court has sole

1

jurisdiction over this matter under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).

## STANDING

3.     Plaintiff meets the definition of an "interested party" under 19 U.S.C. § 1677(9)(A) as a trade association of which a majority of its members are producers or exporters of subject merchandise.

4.     Plaintiff participated in the underlying investigations giving rise to this action and, therefore, constitutes "a party to the proceeding in connection with which the matter arose" under 19 U.S.C. § 1516a(a)(2)(A).

5.     As an interested party that participated as a party in the underlying proceeding, Plaintiff has standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS

6.     Plaintiff filed the Summons that initiated this case on January 27, 2025. This action is timely as the Complaint is being filed on February 25, 2025, within 30 days of the filing of the Summons that initiated this case. Therefore, Plaintiff commenced this action within the time limit specified in 19 U.S.C. § 1516a(a)(2)(A)(i)(II), 28 U.S.C. § 2636(c), and Rule 3(a)(2) of the Rules of the U.S. Court of International Trade.

## STATEMENT OF FACTS

7.     On October 25, 2023, the American Shrimp Processors Association filed petitions with the Commission and Commerce, alleging that domestic producers of frozen warmwater shrimp were materially injured or threatened with material injury by reason of subsidized imports of frozen warmwater shrimp form Ecuador, India, Indonesia, and Vietnam and imports of frozen warmwater shrimp from Indonesia and Ecuador sold at less than fair value ("subject

2

imports"). Following the filing of the petition, the Commission instituted antidumping investigations under investigation numbers 731-TA-1659-1660 and countervailing duty investigations under investigation numbers 701-TA-699-702. *Frozen Warmwater Shrimp From Ecuador, India, Indonesia, and Vietnam; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations*, 88 Fed. Reg. 74,511 (Oct. 31, 2023).

8. On December 14, 2023, the Commission published notice of its preliminary determination. The Commission found that there was a reasonable indication that an industry in the United States was materially injured by reason of subject imports. *Frozen Warmwater Shrimp From Ecuador, India, Indonesia, and Vietnam*, 88 Fed. Reg. 86,677 (Dec. 14, 2023).

9. On January 26, 2024, the Commission released draft questionnaires for interested parties to submit comments on revisions to the collection of data relevant to these investigations. Interested parties submitted comments on the draft questionnaires on March 4, 2024.

10. The Department of Commerce conducted corresponding countervailing duty investigations of frozen warmwater shrimp from Ecuador, India, Indonesia, and Vietnam and antidumping investigations of merchandise from Ecuador and Indonesia. Commerce issued its final determinations in its antidumping and countervailing duty investigations on October 28, 2024. Commerce found that subject imports from Indonesia were sold in the United States at less than fair value and subject imports from Ecuador, India, and Vietnam were subsidized by their respective governments. *Frozen Warmwater Shrimp From Indonesia: Final Affirmative Determination of Sales at Less-Than-Fair Value*, 89 Fed. Reg. 85,498 (Oct. 28, 2024); *Frozen Warmwater Shrimp From Ecuador: Final Affirmative Countervailing Duty Determination*, 89 Fed. Reg. 85,506 (Oct. 28, 2024); *Frozen Warmwater Shrimp From India: Final Affirmative*

*Countervailing Duty Determination*, 88 Fed. Reg. 85,502 (Oct. 28, 2024); *Frozen Warmwater Shrimp From the Socialist Republic of Vietnam: Final Affirmative Countervailing Duty Determination*, 88 Fed. Reg. 85,500 (Oct. 28. 2024).  Commerce further published notices of a negative final countervailing duty determination with respect to subject imports from Indonesia and a negative final determination of sales at less than fair value with respect to subject imports from Ecuador.  *Frozen Warmwater Shrimp From Indonesia: Final Negative Countervailing Duty Determination*, 89 Fed. Reg. 85,512 (Oct. 28, 2024); *Frozen Warmwater Shrimp From Ecuador: Final Negative Determination of Sales at Less Than Fair Value*, 89 Fed. Reg. 85,508 (Oct. 28, 2024). Accordingly, the Commission terminated those investigations. *Frozen Warmwater Shrimp From Indonesia and Ecuador; Termination of Investigations*, 89 Fed. Reg. 88,061 (Nov. 6, 2024).

11. On June 26, 2024, the Commission published notice that it was instituting its final injury investigations.  *Frozen Warmwater Shrimp From Ecuador, India, Indonesia, and Vietnam; Scheduling of the Final Phase of Countervailing Duty and Antidumping Duty Investigations*, 89 Fed. Reg. 53444 (June 26, 2024).

12. Along with other interested parties, Plaintiff submitted a prehearing brief on October 15, 2024, gave testimony at the Commission's hearing on October 22, 2024, and filed a post-hearing brief on October 29, 2024.

13. On December 17, 2024, the Commission published notice of its affirmative determinations that a domestic industry was materially injured by reason of subject imports. *Frozen Warmwater Shrimp From Ecuador, India, Indonesia, and Vietnam*, 89 Fed. Reg. 102,163 (Dec. 17, 2024).  The Commission's written views and final staff report, summarizing the data collected in the investigations, were published in December 2024.  *See Frozen Warmwater*

*Shrimp,* USITC Pub. 5566.

14.     In determining whether the domestic industry was materially injured by reason of subject imports, the Commission considered the volume and price effects, and the impact of subject imports from Ecuador, India, Indonesia, and Vietnam. The Commission cumulated subject imports for purposes of its material injury analysis, determining that there was a reasonable overlap of competition between and among imports from each subject country. *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 36.

15.     The Commission found that the volume of cumulated subject imports declined from 2021 to 2023, but was higher between the interim periods, covering January through March of 2023 and January through March of 2024. *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 53. Further, the Commission noted that subject imports as a share of apparent U.S. consumption increased from 2021 to 2023 and between interim 2023 and interim 2024. *Id*. Based on the record, the Commission found that the volume of cumulated subject imports was significant in absolute terms and relative to production and consumption in the United States. *Id*. at 54.

16.     When the Commission evaluated the price effects of subject imports, the Commission found that there was "at least a moderate degree of substitutability" between cumulated subject imports and the domestic like product and that "price is an import factor in purchasing decisions, among other important factors." *Id*. at 54. The Commission further found underselling by the cumulated subject imports during the period of investigation ("POI"). *Id*. at 55. The Commission also noted that "U.S. consumers are largely not aware of whether they are buying domestically produced wild-caught shrimp or imported farm-raised shrimp, and thus are not in a position to offer a premium for wild-caught shrimp." *Id*. at 61.

17.     Based on its observations of the volume and pricing effects, the Commission

concluded that subject imports "significantly undersold the domestic like product" during the POI and that the underselling led to significant lost sales by the domestic industry and an increase in subject imports market share between 2021 and 2023. *Id*. at 58.

18. The Commission also found that prices declined over the POI while apparent U.S. consumption also declined. The Commission claimed that the concurrent decline of prices and apparent U.S. consumption indicated that subject imports were depressing the price of frozen warmwater shrimp. *Id*. at 64-65. The Commission made no findings regarding price suppression. *Id*. at 65.

19. With regards to the impact of cumulated subject imports on the domestic industry, the Commission examined the domestic industry's performance separately for U.S. processors and U.S. fishermen, and evaluated the domestic industry's output, employment, and financial performance during the POI. *Id*. at 70. The Commission found that the U.S. processors' loss of sales and market share to subject imports led to declines in their production, capacity utilization and U.S. shipments. *Id*. at 76. The Commission also determined that because of the domestic processors' lower output and depressed prices, subject imports created a sharp decline in the domestic industry's financial performance during the POI. *Id*. at 76-77. The Commission further observed that U.S. fishermen likewise experienced a declining financial performance during the POI, because domestic processors' lowered the price they would pay for fresh shrimp. *Id*.

20. Respondents argued that other factors, including biological limits on the volume of wild-caught shrimp that U.S. fishermen could harvest, and the lack of correlation between the volume of subject imports and domestic supply, were the actual cause of any injury experienced by the domestic industry during the POI. *Id*. at 77-78. The Commission considered these

6

factors, but ultimately rejected Respondents' arguments. Despite historical data on the record to the contrary, the Commission found that the quantity of harvested warmwater shrimp and frozen shrimp production was dictated by the financial incentives of the U.S. fishermen and not by biological factors. *Id*. at 79.

21. The Commission also disagreed with the respondents that declining demand caused any injury to the domestic industry, citing increasing volumes of cumulated subject imports, the shift in market share, and the U.S. processors' ability to supply additional volumes of frozen warmwater shrimp. *Id*. at 81. The Commission made this finding despite evidence on the record that import volumes actually declined over most of the POI. *Id*.

## **STATEMENT OF CLAIMS AND BASES FOR RELIEF**

22. The Commission's determinations are not supported by substantial evidence and are not in accordance with law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i).

## **COUNT ONE**

23. Paragraphs 1-22 are incorporated by reference herein.

24. The statute requires the Commission to determine whether "there has been significant price underselling by the imported merchandise as compared with the price of domestic like products of the United States." 19 U.S.C. § 1677(7)(C)(ii)(I).

25. The Commission found that underselling by cumulated subject imports was significant because it led to a "shift in market share from the domestic industry to cumulated subject imports between 2021 and 2023." *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 58. The Commission's findings with regards to underselling were improper for two reasons. First, the Commission considered changes in the market share for fresh and frozen warmwater shrimp even though domestic production of frozen shrimp was more comparable to cumulated subject

7

imports of frozen shrimp. *Id*. at 58. Second, the Commission failed to consider market share over the full POI, including interim 2024. From 2021 to interim 2024, U.S. processors of frozen warmwater shrimp lost only .3 percent of market share. *Id*. at C-3 (Table C-1). Therefore, U.S. processors largely maintained their market share over the POI despite declining prices and declining apparent U.S. consumption.

26. The Commission failed to support its finding that underselling was significant when there was such a small shift in market share. *See NMB Singapore Ltd. v. United States*, 557 F.3d 1316, 1319-20 (Fed. Cir. 2009) ("While {an agency's} explanations do not have to be perfect, the path of {the agency's} decision must be reasonably discernable."); *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962) (requiring a "'rational connection between the facts found and the choice made.'"). The Commission's finding that underselling was "significant" when U.S. processors lost only .3 percent points of market share is inconsistent with the plain language of the statute.

27. Therefore, the Commission's price analysis was not supported by substantial evidence.

## COUNT TWO

28. Paragraphs 1-27 are incorporated by reference herein.

29. The Commission failed to provide a reasoned basis for its conclusions regarding the interchangeability of wild-caught shrimp and farm-raised shrimp. Wild caught shrimp represented nearly all of domestic production and farm-raised shrimp represented nearly all of cumulated subject imports. The questionnaire data and anecdotal evidence on the record clearly established that there is are separate and distinct demand for farm-raised and wild-caught shrimp,

based on consumer preferences. Despite significant record evidence emphasizing the differences between wild-caught and farm-raised shrimp, the Commission relied solely on Petitioner's anecdotal evidence to support its conclusion that the production method does not heavily impact purchasing decisions.

30. Based on the record as a whole, the Commission erred in finding no attenuated competition between farm-raised cumulated subject imports and wild-caught domestic product that severed the causal link between cumulated subject imports and the price for the domestic product. Pursuant to 19 U.S.C. §§ 1671d(b), 1673d(b), the Commission is required to determine whether the domestic industry is "materially injured or threatened with material injury by reason of" subject imports but does not define the phrase "by reason of." *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 38. The Commission's "evaluation under the 'by reason of' standard must ensure that subject imports are more than a minimal or tangential cause of injury and that there is a sufficient causal, not merely a temporal, nexus between subject imports and material injury." *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 38 n.116 (citing *Nippon Steel Corp. v. U.S. Int'l Trade Com'n*, 345 F.3d 1379, 1384 (Fed. Cir. 2003)); *Mittal Steel Point Lisas Ltd. v. United States*, 542 F.3d 867, 873 (Fed. Cir. 2008) (quoting *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 722 (Fed. Cir. 1997) ("{T}his court requires evidence in the record 'to show that the harm occurred 'by reason of' the {less than fair value} imports, not by reason of a minimal or tangential contribution to material harm caused by {less than fair value} goods")). Furthermore, "{t}he legislative history explains that the Commission must examine factors other than subject imports to ensure that it is not attributing injury from other factors to the subject imports, thereby inflating an otherwise tangential cause of injury into one that satisfies the statutory material injury threshold." *Frozen Warmwater Shrimp*, USITC Pub. 5566 at 39.

31.     The Commission's failure to acknowledge attenuated competition between farm-raised and wild-caught shrimp was arbitrary and an abuse of discretion for failure to follow the statute and past practice.  *See, e.g., SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001).  Therefore, the Commission's determination lacks substantial evidence that there was material injury to the domestic industry "by reason" of cumulated subject imports when competition with subject imports was attenuated.

## COUNT THREE

32.     Paragraphs 1 through 31 are incorporated by reference herein.

33.     In its investigation of *Frozen Warmwater Shrimp*, the Commission failed to adopt certain comments on the draft questionnaires, proposed by respondents.  The revisions suggested by respondents largely requested that the Commission collect data on other factors that might have affected the domestic industry's performance during the POI.  The Commission failed to adopt the revisions to the U.S. purchasers' questionnaires suggested by the respondents.

34.     The collection of relevant data through questionnaires to purchasers is fundamental to the development of the factual record on which the Commission's final determinations are based.   By failing to incorporate the revisions and comments suggested by the respondents, the Commission caused the factual record to be incomplete.  Further, without information to support other causal factors on the record, the Commission wrongly attributed any injury caused by other factors to subject imports.  In relying on its incomplete factual record, the Commission's final determination is not supported by substantial evidence and not in accordance with law.

## COUNT FOUR

35.     Paragraphs 1 through 34 are incorporated by reference herein.

10

36. With regards to the Commission's analysis of the impact of subject imports on the domestic industry, the Commission's conclusion that cumulated subject imports had a significant adverse effect on the domestic industry is also unsupported by substantial evidence. The Commission's determination was largely based on so-called "significant underselling." As discussed in Count One above, the Commission's finding is inconsistent with the plain meaning of the statute. The Commission failed to explain how a minor shift in market share had a "significant impact" on the domestic industry. The Commission's determination renders the term "significant" superfluous and therefore is unlawful. *See Astoria Fed. Sav. & Loan Ass'n*, 501 U.S. at 112.

## COUNT FIVE

37. Paragraphs 1 through 36 are incorporated by reference herein.

38. The statute requires that the Commission determine that a domestic industry is materially injured or threatened with material injury by reason of subject imports. 19 U.S.C. § 1671d(b), 1673d(b). Based on the errors in the Commission's findings concerning price effects, impact, and causation described in Counts One through Four, the Commission's ultimate determination is unsupported by substantial evidence and not in accordance with law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a) hold that the Commission's determinations in the subject investigations are unsupported by substantial evidence and otherwise not in accordance with law.

b) remand the investigations to the Commission for disposition consistent with any orders and opinions of this Court; and

c) provide such other relief as this Court deems proper.

                                         Respectfully submitted,

                                         */s/ Lizbeth R. Levinson*
                                         Lizbeth R. Levinson
                                         Brittney R. Powell
                                         Alexander D. Keyser

                                         FOX ROTHSCHILD LLP
                                         2020 K Street,
                                         NW Suite 500
                                         Washington, DC  20006
                                         Tel: (202) 794-1183
                                         Email: akeyser@foxrothschild.com

                                         *Counsel to Plaintiff Indonesian Fishery*
                                         *Producers Processing and Marketing*
                                         *Association*